# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

United States of America,   Crim. No. 10-248 (JRT/JJK)

Plaintiff,

v.   **REPORT AND RECOMMENDATION**

(2) Juan Manuel Cristerna Estrada,

Defendant.

---

Jeffrey M. Bryan, Esq., Assistant United States Attorney, counsel for Plaintiff.

Daniel C. Guerrero, Esq., Meshbesher & Spence, Ltd, counsel for Defendant.

---

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on Defendant Juan Manuel Cristerna Estrada's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 61). This Court held an evidentiary hearing on the motion on November 22, 2010, and received two exhibits from the Government, including one search warrant and one Miranda warning card. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that Defendant's motion be denied.

## BACKGROUND

Defendant moves the Court to suppress the evidence obtained as a result of search and seizure of Defendant's residence and to suppress his post-arrest statement to law enforcement.

**The Search Warrant**

On August 19, 2010, Magistrate Judge Arthur J. Boylan issued a warrant to search XXXX Lancaster Lane, Apartment XXX, Plymouth, MN. (Hr'g Ex. No. 1.) The search warrant was issued on the basis of probable cause contained in the application for search warrant and supporting affidavit of a deputized federal law enforcement officer Daniel L. Irish (the "Affidavit"). (*Id.*) The search of the premises was conducted on August 19, 2010. (*Id.*) During the course of the search, documents, a digital scale, drug paraphernalia, a .380 caliber handgun, and two cell phones were seized by the Government. (*Id.*)

Based on the above, Defendant Estrada was subsequently indicted on one count of conspiracy to distribute methamphetamine, one count of aiding and abetting distribution of methamphetamine, and one count of aiding and abetting possession with intent to distribute methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 846, and Title 18, United States Code, Section 2. (Doc. No. 18.)

## DISCUSSION

I.  **Motion to Suppress Evidence Obtained from Search and Seizure**

Defendant Estrada filed a Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 61). At the hearing, Defendant's counsel asked this Court to consider whether, as set forth in the warrant application and affidavit, there was probable cause sufficient to search Defendant's residence. The Government argued that the search conducted at Defendant Estrada's residence was lawful, as it was based on probable cause as set forth in the warrant application and supporting affidavit. Neither the Defendant nor the Government requested post-hearing briefing on these issues. Exhibits were received in regard to the search and seizure and admitted into evidence.

   A.  **Probable Cause**

This Court concludes that the search here was supported by probable cause, as set forth in the warrant application and the underlying affidavit. "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Illinois* v. *Gates*, 462 U.S. 213, 236 (1983)). When determining whether probable cause exists, a court does not independently evaluate each piece of information, but, rather, considers all of the facts for their cumulative meaning. *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002). The task of a court issuing a search warrant is "simply

to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004). "In determining whether probable cause exists, [the courts] recognize that the police possess specialized law enforcement experience and thus may draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous." *United States v. Mendoza,* 421 F.3d 663, 667 (8th Cir. 2005). Courts should not review search warrants in a hyper-technical fashion. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006).

In reviewing the decision of the issuing court, this Court must ensure that the court "'had a substantial basis for . . . conclud[ing] that probable cause exists.'" *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238-39). Because reasonable minds may differ on whether a particular search-warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

Here, the Affidavit of Daniel Irish, dated August 19, 2010, which is twelve pages in length, indicates that Defendant Estrada was arrested at the scene of a large methamphetamine transaction. (H'rg. Ex. 1, Affidavit of Daniel L. Irish ("Irish Aff.") ¶ 7.) The Affidavit states that after his arrest, Defendant Estrada provided law enforcement officers and the booking officials with his residential address.

4

(*Id.* ¶ 8.) The Affidavit describes how after exiting a green minivan, Defendant Cueto got inside the Undercover Officer's vehicle, and instructed her to drive to the other end of the parking lot. The green minivan driven by Defendant Estrada followed in tandem, and in a manner consistent with previous drug transactions between the Undercover Officer and Defendant Cueto. (Irish Aff. ¶ 7.) The Affidavit further recounts that law-enforcement officers recovered drug notes and two bank deposit slips from the glove compartment of the green minivan that Defendant was driving and in which Defendant Cueto had arrived. (Irish Aff. ¶ 9-10.) The two deposit slips indicated that two cash deposits (in amounts of $3000 and $6000) were made into two different accounts, at two different Wells Fargo Bank branches, within less than a half hour of each other. (Irish Aff. ¶ 9.) The drug notes reflected numerous transactions and numerous large dollar amounts in the hundreds of thousands of dollars. (Irish Aff. ¶ 10.) Based on these facts, and the experience and training of Officer Irish, there was probable cause to believe that the stated residence of Defendant Estrada would contain evidence of drug trafficking activity, including dispositions of proceeds or money laundering activities. Accordingly, this Court concludes that the search warrant here was issued upon a cogent showing of probable cause.

    **B.    Leon Good-faith Exception**

Even if probable cause did not exist, there was a facially valid warrant, and therefore the good-faith exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897 (1984), would have to be considered. "Under the

good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (quotations omitted). "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (quotations omitted). Here, this Court concludes even if probable cause did not exist, the good-faith exception would apply. There is no evidence to suggest that the officer's reliance on the warrant was not in good faith, nor is there evidence that the officer's reliance was not reasonable. Thus, the *Leon* good-faith exception provides an alternative basis for the conclusion that the evidence seized as a result of the execution of the search warrant need not be suppressed. Therefore, this Court recommends that Defendant's motion to suppress evidence be denied.

**II.     Defendant's Motion to Suppress Post-Arrest Statement to Law Enforcement.**

Defendant moves to exclude "all statements Defendant made to law enforcement after he was arrested on August 18, 2010, which were obtained in

6

violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) and *Edwards v. Arizona*, 451 U.S. 477 (1981)." (Doc. No. 16.) A defendant may waive the rights conveyed in *Miranda* warnings provided the waiver is voluntary, knowing, and intelligent. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). It is the Government's burden to show by a preponderance of the evidence that the suspect's waiver meets these standards. *Miranda*, 384 U.S. at 473. Whether a waiver is voluntary, knowing, and intelligent depends on the totality of the circumstances. *Moran*, 475 U.S. at 421. To make a knowing and intelligent waiver, the defendant must have "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Syslo*, 303 F.3d 860, 865 (8th Cir. 2002). Courts look to such factors as the age and education level of the defendant, lack of advice as to constitutional rights, length of detention, "repeated and prolonged nature of questioning," and the use of physical punishment. *Tippitt v. Lockhart*, 859 F.2d 595, 598 (8th Cir. 1988).

Further, regardless of whether *Miranda* is implicated, the Supreme Court has recognized that, for a confession (or incriminating statement) to be admitted into evidence, to satisfy the Fifth Amendment's right against self-incrimination, it must be voluntary. *See Dickerson v. United States*, 530 U.S. 428, 433-34 (2000) (stating that the Supreme Court applies the due process voluntariness test). For a confession to be considered voluntary, a Court must examine "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession." *Id.* at 434. A statement is involuntary if it "was extracted by threats,

7

violence, or . . . promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." *United States v. Gallardo-Marquez*, 253 F.3d 1121, 1123 (8th Cir. 2001) (quotations omitted). Whether a defendant's will has been overborne is determined by an examination of the totality of the circumstances, including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure. *United States v. Brave Heart*, 397 F.3d 1035, 1040 (8th Cir. 2005). Some factors this Court may consider in evaluating the totality of the circumstances include: the age of the accused; the level of education of the accused; the lack of advice to the accused on his constitutional rights; the length of the detention; the repeated and prolonged nature of the questioning; and the use of physical punishment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *see also Brave Heart*, 397 F.3d at 1041 ("[O]fficers elicit confessions through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices . . . . None of these tactics render a confession involuntary, however, unless the overall impact of the interrogation cause the defendant's will to be overborne.") (quotations and citation omitted). The government bears the burden of proving voluntariness by a preponderance of the evidence. *Brave Heart*, 397 F.3d at 1040.

Defendant Estrada has not articulated any reason for his boilerplate allegation that any statements made to law enforcement after he was arrested on August 18, 2010, were obtained in violation of *Miranda v. Arizona*, and therefore should be excluded. Based on the totality of the circumstances, this Court concludes that the Government has shown that Defendant's waiver was voluntary, knowing, and intelligent.

Defendant Estrada was informed of his rights in Spanish and freely and voluntarily waived those rights. Special Agent Hamblen, who interviewed Defendant Estrada after his arrest, testified that he has fourteen years of Spanish-speaking experience and training, including substantial experience with interviewing Spanish-speaking arrestees, in Spanish.

Agent Hamblen testified that on August 18, 2010, he was asked to assist the arresting officers with Spanish-language interviews. That day, he interviewed two people, including Defendant Estrada. Agent Hamblen testified that his conversation with Defendant took place in an interview room within the detention area at the Champlin Police Department. His role was to establish whether Defendant was willing to speak with him and provide information regarding a drug conspiracy. Agent Hamblen testified that he introduced himself and provided his name and title to Defendant. He then took out his Miranda rights card, which contained Miranda warnings in Spanish, and read the text directly from the card to Defendant in Spanish. (Hr'g. Ex. 2.) Defendant responded that he understood his rights and was willing to speak with him. According to Agent

9

Hamblen, Defendant Estrada was not in any way incoherent, responded to questions in a normal manner, and did not appear to be impaired by drugs or alcohol. Agent Hamblen further testified that Defendant Estrada was quiet but confident in demeanor, that he understood the questions and had no trouble communicating his responses. Approximately five minutes after agreeing to answer Agent Hamblen's questions, Defendant Estrada asked to speak with counsel. Agent Hamblen immediately stopped the interview at that time.

Based on the record presented, this Court finds that Defendant was not under the influence of any mind-altering substances, that he appeared to be of normal intelligence, that he was detained for a short period of time, and he waived his rights almost immediately after being advised of them. Further, Agent Hamblen read Defendant his rights in Spanish and Defendant did not ask for clarification at any time. And Defendant does not assert the existence of any physical or mental impairments that would impact the voluntariness analysis. Nor is there any evidence of coercion, physical intimidation, or punishment by the police. Therefore, viewing the totality of the circumstances, this Court finds that Defendant's will was not overborne and the statements that he made during the interview were voluntary. *See Gallardo-Marquez*, 253 F.3d at 1123 (noting that a statement is involuntary if it "was extracted by threats, violence, or . . . promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired") (quotations omitted). In sum, this Court finds that Defendant understood all of the rights afforded him under *Miranda* and then

voluntarily waived those rights. Therefore, Defendant's motion to suppress the statements made to law enforcement should be denied.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 61), be **DENIED.**


Date: December 17, 2010

                                           *s/Jeffrey J. Keyes*
                                           JEFFREY J. KEYES
                                           United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 31, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.